**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 97-11140

---

LARRY MAHAN, INC.; LARRY MAHAN,

Plaintiffs - Counter Defendants -Appellees,

VERSUS

MAHAN WESTERN INDUSTRIES, INC ET AL.,

Defendants,

TEXAS WESTERN INDUSTRIES, formerly known as
Mahan Western Industries, Inc.

Defendant - Counter Claimant - Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas
(3:95-CV-409-H)

---

February 17, 1999

Before  JOLLY, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[1]

### BACKGROUND

Larry Mahan and Larry Mahan, Inc. ("Appellees") entered into a license agreement ("Agreement") with Texas Western Industries' ("TWI") predecessor-in-interest, which granted TWI the exclusive right to manufacture and sell western-wear using Appellees' endorsement.  The Agreement required TWI:  (1) to obtain and maintain products liability insurance; (2) to name Appellees as

---

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

additional insureds in the policy; and (3) to have the policy provide that the insurer would not terminate or materially modify the policy without thirty days advance notice to Appellees. The Agreement declared that TWI's failure to maintain the proper insurance coverage constituted a material breach. The Agreement also provided that "[Appellees] shall have a right to terminate this Agreement upon the material breach by [TWI] which is not cured within thirty days following the giving of written notice to the breaching party of the intent to terminate."

In December 1994, Appellees notified TWI that they intended to terminate the Agreement if TWI did not provide evidence of insurance and comply with various other provisions of the Agreement. TWI's insurance policies did not name Appellees as additional insureds or require the insurer to give them thirty days notice of termination or material modification.

In the Spring of 1995, Appellees sued to terminate the Agreement. The district court granted summary judgment in favor of Appellees. The district court concluded that TWI materially breached the License Agreement because its insurance policies (1) did not name Appellees as additional insureds and (2) failed to require its insurer to give Appellees thirty days advance notice of termination or material modification. The district court also granted summary judgment for Appellees on TWI's counterclaims and awarded attorneys fees to Appellees. TWI appeals. We affirm.

**DISCUSSION**

**I.   Termination of the Agreement**

2

We review summary judgment decisions de novo. Nowlin v. RTC, 33 F.3d 498, 502 (5th Cir. 1994). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We conclude that the district court correctly decided that there is no genuine issue as to any material fact and Appellees are entitled to judgment as a matter of law.

A.   Compliance with the Termination Provision

TWI contends that Appellees failed to strictly comply with the termination provision of the Agreement. This provision states that "[Appellees] shall have a right to terminate this Agreement upon the material breach by [TWI] which is not cured within thirty days following the giving of written notice to the breaching party of the intent to terminate." TWI argues that Appellees' notice letter did not state that TWI had breached the Agreement by failing to provide the requisite insurance and, thus, Appellees' request for evidence of insurance should not be construed as notice of a breach. TWI argues that it did not receive the protection bargained for in the Agreement--notice of a breach and thirty days to rectify it. Further, TWI notes that Texas law requires strict compliance with the Agreement's notice requirement. See Stretcher v. Gregg, 542 S.W.2d 954, 957 (Tex.Civ.App.--Texarkana 1976, no writ).

We conclude that the notice letter was adequate. It demanded

3

that TWI "submit evidence that [Appellees] are additional insureds on the requisite products liability insurance."  The letter also stated that Appellees intended to terminate the Agreement if TWI failed to comply.

B.    Materiality of the Breach

TWI argues that there is an issue of fact about whether its insurance policies covered Appellees as additional insureds.  The Agreement provided that "[TWI] shall . . . name [Appellees] as additional insureds" on its products liability insurance policy.  By its plain language the Agreement required TWI to name Appellees as additional insureds.  It is undisputed that Appellees' were not so named.

First, TWI maintains that it substantially performed its insurance coverage obligations because the terms of its Underlying and Umbrella policies covered Appellees in the requisite amounts even though the policies did not name Appellees as additional insureds.  See Cranetex, Inc. v. Precision Crane & Rigging of Houston, Inc., 760 S.W.2d 298, 302 (Tex.App.--Texarkana 1988, writ denied) (stating that "substantial performance . . . is the legal equivalent of full compliance").  TWI maintains that section IV, paragraph c(5) of its Umbrella Policy covered "any person or organization for whom  [TWI had] agreed in writing prior to injury to provide insurance" and, therefore, the policy  unambiguously covered Appellees.

Further, TWI maintains that its failure to require the insurer to give Appellees  thirty  days  notice  of  any  cancellation  or

material modification of the policy was merely a technical deficiency which should be excused by the substantial compliance doctrine. See In the Interest of Doe, 917 S.W.2d 139, 142 (Tex.App.--Amarillo 1996, writ denied). TWI explains that the policies were in force without interruption and that its insurance company would have given Appellees notice of cancellation even though the policies did not require it.

The district court properly declined to rewrite the Agreement by substituting TWI's substantial performance theory for the express terms of the contract. See Varibus Corp. v. South Hampton Co., 623 S.W.2d 157, 160 (Tex.App.--Beaumont 1981, writ ref'd n.r.e.) (holding that the trial court erred by "den[ying] the right to termination granted by the contract" and "substitut[ing] plaintiff's theory of substantial performance."); cf. Wood Motor Co., Inc. v. Nebel, 238 S.W.2d 181, 185 (Tex. 1951) (holding that the lower courts erred by requiring a just cause for terminating a contract which unambiguously allowed termination at will).

Second, TWI maintains that its alleged breaches were not material. Because no product liability claims were made against Appellees and the insurance was never canceled, TWI contends that its failure to secure minor amendatory endorsements to its insurance policies did not reasonably evidence an intent to repudiate the Agreement. The essence of the promise in the Agreement was that TWI would provide complete insurance protection for Appellees. Because its insurance covered Appellees, TWI argues that the Agreement's termination provision should be construed

5

narrowly to avoid forfeiture. See Mayhew v. Vanway, 371 S.W.2d 90, 93 (Tex.Civ.App.--Houston 1963, no writ).

We disagree. The Agreement specifically provided that the failure to maintain the requisite insurance coverage was a material breach. "While forfeitures are not favored, they are not illegal. When the parties in unambiguous language write into their agreement a provision for forfeiture, the courts will enforce the provision." Pittman v. Sanditen, 611 S.W.2d 663, 668 (Tex.Civ.App.--San Antonio 1980), rev'd on other grounds, 626 S.W.2d 496 (Tex. 1982) (citations omitted); see Maddox Motor Co. v. Ford Motor Co., 23 S.W.2d 333, 338 (Tex.Com.App. 1930, holding approved) (stating that courts will enforce contractual termination provisions). The termination provision gave Appellees the right to terminate the Agreement upon TWI's material breach and provided that the failure to maintain the requisite insurance coverages was a material breach. Undisputedly, TWI's insurance policies did not name Appellees as additional insureds or provide for thirty days notice of termination or material modification. Therefore, Appellees had the right to terminate the Agreement.

C. TWI's Waiver, Estoppel, and Laches Defenses

Under Texas law, waiver is the intentional relinquishment of a known right or conduct inconsistent with claiming that right. See Tenneco, Inc. v. Enterprise Products Co., 925 S.W.2d 640, 643 (Tex. 1996). "A party's express renunciation of a known right can establish waiver. Silence or inaction, for so long a period as to yield the known right, is also enough to prove waiver." Id.

6

(citations omitted).

TWI maintains that Appellees waived the right to terminate the Agreement for breaching its insurance provisions.[2]  It contends that it provided evidence of insurance to Appellees shortly after the execution of the Agreement.  Thus, TWI argues that Appellees' five year delay in asserting that TWI breached the Agreement's insurance provisions raises genuine issues of material fact regarding whether their claims are barred by waiver.  See Tenneco, Inc. v. Enterprise Products Co., 925 S.W.2d at 643 (silently accepting performance for an extended period proved a waiver of a known right).  Further, TWI contends that, under Texas law, the non-waiver provision in the Agreement was not conclusive but, rather, evidence that there was not a waiver.  See Enserch Corp. v. Rebich, 925 S.W.2d 75, 82 (Tex.App.--Tyler 1996, writ dism'd by agr.).

To support its claim that it provided evidence of insurance to Appellees, TWI introduced the testimony and affidavit of one of its directors, Steven Hammond ("Hammond").  In the preliminary injunction hearing, when asked if TWI provided Appellees with evidence that they were named as additional insureds, Hammond answered "I think we did way back then."  On cross-examination, Hammond admitted that he believed  Appellees received evidence of

---

[2]Although TWI also contends that the district court erred by rejecting its estoppel and laches defenses, it fails to explain how the summary judgment evidence establishes the elements of these defenses.  Therefore, we conclude without discussion that the district court did not err by granting summary judgment for Appellees on the issues of estoppel and laches.

7

insurance because they did not complain.  Similarly, Hammond's affidavit states that "I have always believed" that TWI provided Appellees with evidence of insurance within thirty days of the Agreement's execution.

A factual dispute does not necessarily foreclose summary judgment.  See Berry v. Armstrong Rubber Co., 989 F.2d 822, 824 (5th Cir. 1993).  "The dispute must be genuine, with facts on both sides of a material issue before a court must submit it to a jury." Id.  Larry Mahan unequivocally stated that TWI never provided him with evidence of insurance.  In contrast, Hammond's "belief" that TWI provided evidence of insurance to Appellees is not based on personal knowledge or business records.  Instead, Hammond's "belief" arose solely from Appellees' failure to complain. Hammond's testimony and affidavit fail to create a genuine issue of material fact.

## II.  TWI's Counterclaims

Under Texas law, "a party to a contract who is himself in default under the contract cannot maintain a suit for its breach. Martin v. Xarin Real Estate, Inc., 703 F.2d 883, 889 (5th Cir. 1983).  As shown above, TWI materially breached the Agreement.

TWI notes that "[a] party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part."  Hanks v. GAB Business Services, Inc., 644 S.W.2d 707, 708 (Tex. 1982).  It contends that the district court erred by granting summary judgment on its counterclaims because Appellees elected to treat the contract as continuing by collecting advances

8

for almost five years before complaining about the breach.

We disagree.  In <u>Hanks</u>, the counter claimant chose to treat the contract as continuing during the dispute and subsequent litigation.  <u>See</u> <u>id.</u> at 708.  In contrast, the  summary judgment evidence in this case fails to establish that Appellees elected to treat the contract as continuing after discovering TWI's breach.  <u>See</u> <u>supra</u>, II.C.  Therefore, we conclude that the district court did not err by granting summary judgment for Appellees on TWI's counterclaims.

## CONCLUSION

We affirm the summary judgment in favor of Appellees.

AFFIRMED.